RECEIVED
JUN 17 2002
MICHAEL W. DOBBINS, CLERK
UNITED STATES DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

United States of America ex rel.

PIERRE WILLHITE,
(Full name and prison number)
(Include name under which convicted)

PETITIONER

vs.

JONATHAN R. WALLS,
(Warden, Superintendent, or authorized person having custody of petitioner)

RESPONDENT, and

(Fill in the following blank only if judgment attacked imposes a sentence to commence in the future)

ATTORNEY GENERAL OF THE STATE OF

N/A
(State where judgment entered)

CASE NO. 02C 4404
(Supplied by Clerk of this Court)

JUDGE ALESIA

MAGISTRATE JUDGE BOBRICK

DOCKETED
JUN 20 2002

Case Number of State Court Conviction:

94-CR-25737(02)

## PETITION FOR WRIT OF HABEAS CORPUS -- PERSON IN STATE CUSTODY

1. Name and location of court where conviction entered: Circuit Court of Cook County, Il. Criminal Division, 2650 S. Calif. Ave. Chisago, IL. 60608

2. Date of judgment of conviction: Sentenced 01-09-98.

3. Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known)

Indictment no. 94-CR-25737(02): firs t degree murder, home invasion, and aggravated battery with a firearm.

4. Sentence(s) imposed: Aggregate term of 66 years

5. What was your plea? (Check one)
   (A) Not guilty (XX)
   (B) Guilty ( )
   (C) Nolo contendere ( )

If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:

Not applicable

PART I – TRIAL AND DIRECT REVIEW

1. Kind of trial: (Check one): Jury (XX) Judge only ( )

2. Did you testify at trial? YES (XX) NO ( )

3. Did you appeal from the conviction or the sentence imposed? YES (XX) NO ( )

(A) If you appealed, give the

(1) Name of court: Illinois Appellate Court, First District

(2) Result: Appeal Denied No. 01-98-0984

(3). Date of ruling: June 14, 1999

(4) Issues raised: The trial judge failed to conduct a proper Montgomery balancing test before permitting the State to impeach Pierre Willhite with his two prior felony (See attached pages)

(B) If you did not appeal, explain briefly why not:

Not applicable

4. Did you appeal, or seek leave to appeal, to the highest state court? YES (XX) NO ( )

(A) If yes, give the

(1) Result Leave to Appeal Denied; No. 87973.

(2) Date of ruling: October 06, 1999.

(3) Issues raised: The State improperly bolstered its single-eyewitness case when Detective Davis March gave hearsay testimony that a second eyewitness, Luis Cruz, had also identified Pierre Willhite as "one of the offenders."

(B) If no, why not: Not applicable.

5. Did you petition the United States Supreme Court for a writ of *certiorari*? Yes ( ) No (XX)

If yes, give (A) date of petition: N/A (B) date *certiorari* was denied: N/A

PART II – COLLATERAL PROCEEDINGS

1. With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

YES (XXX NO ( )

With respect to *each* post-conviction petition give the following information (use additional sheets if necessary)

A. Name of court: Circuit Court of Cook County, Criminal Division

B. Date of filing: June 28, 1999

C. Issues raised: See attached pages.

D. Did you receive an evidentiary hearing on your petition? YES ( ) NO (XX)

E. What was the court's ruling? Summarily dismissed.

F. Date of court's ruling: September 23, 1999

G. Did you appeal from the ruling on your petition? YES (XX) NO ( )

H. (a) If yes, (1) what was the result? Denied: No. 99-3696.

(2) date of decision: June 19, 2000

(b) If no, explain briefly why not: Not applicable

I. Did you appeal, or seek leave to appeal this decision to the highest state court?

YES (XXX) NO ( )

(a) If yes, (1) what was the result? Denied: No. 91173

(2) date of decision: June 29, 2001

(b) If no, explain briefly why not: Not applicable

With respect to this conviction or sentence, have you filed a petition in a state court using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus? YES ( ) NO (XX)

A. If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

1. Nature of proceeding N/A

2. Date petition filed N/A

3. Ruling on the petition N/A

3. Date of ruling N/A

4. If you appealed, what was the ruling on appeal? N/A

5. Date of ruling on appeal N/A

6. If there was a further appeal, what was the ruling ? N/A

7. Date of ruling on appeal N/A

3. With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in federal co
YES ( ) NO (XX)

A. If yes, give name of court, case title and case number: Not applicable

B. Did the court rule on your petition? If so, state

(1) Ruling: Not applicable

(2) Date: Not applicable

4. WITH RESPECT TO THIS CONVICTION OR SENTENCE, ARE THERE LEGAL PROCEEDI PENDING IN ANY COURT, OTHER THAN THIS PETITION?

YES ( ) NO (XX)

If yes, explain: Not applicable

## PART III – PETITIONER'S CLAIMS

1. State briefly every ground on which you claim that you are being held unlawfully. Summarize briefly th supporting each ground. You may attach additional pages stating additional grounds and supporting facts. If y to set forth all grounds in this petition, you may be barred from presenting additional grounds later.

BEFORE PROCEEDING IN THE FEDERAL COURT, YOU MUST ORDINARILY FIRST EXHAUST STATE COURT REMEDIES WITH RESPECT TO EACH GROUND FOR RELIEF ASSERTED.

(A) Ground one See attached pages
Supporting facts (tell your story briefly without citing cases or law):

(B) Ground two See attached pages
Supporting facts:

(C) Ground three See attached pages
Supporting facts:

(D) Ground four See attached pages
Supporting facts:

2 Have all grounds raised in this petition been presented to the highest court having jurisdiction?
YES (XX) NO ( )

3. If you answered "NO" to question (16), state briefly what grounds were not so presented and why not:
Not applicable

PART IV – REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judg attacked herein:

(A) At preliminary hearing ______

(B) At arraignment and plea ______

(C) At trial ______

(D) At sentencing ______

(E) On appeal Michael J. Pelletier, Deputy Defender, 100 W. Randolph St. Suite 5-500, Chicago. Il. 60601

(F) In any post-conviction proceeding Pro-se

(G) Other (state): Pro-se

PART V – FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

YES ( ). NO (XX)

Name and location of the court which imposed the sentence: Not applicable

Date and length of sentence to be served in the future Not applicable

WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled ir proceeding.

Signed on: 6/17/02
(Date)

Pierre Willhite PRO-SE
Signature of attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct.

Pierre Willhite
(Signature of petitioner)

N-91832
(I.D. Number)

P.O. Box 77, 711 Kaskaskia St.
(Address)
Menard, Illinois 62259-0711

PART 1 -- TRIAL AND DIRECT REVIEW:

3(A)(4) Issues raised: Continued

convictions.

Second Issue:

The State improperly bolstered its single-eyewitness case when Detective David March gave hearsay testimony that a second eyewitness, Luis Cruz, had also identified Pierre Willhite as "one of the offenders."

PART II -- COLLATERAL PROCEEDINGS:

C. Issues raised:

First Issue

The trial court erred in entering judgment and sentence on petitioner on each count because the State's evidence was insufficient to support the convictions on all counts in that it showed there was a crime committed but it failed to show that beyond a reasonable doubt that petitioner was one of the offenders of the crime. The testimony linking petitioner to the crime was based upon conflicting and contradicted testimony of Edgar Perez, Elvis Valentine, Delila Robles, Detective David March, and Officer Pigott. This evidence was directly contradicted and therefore rendered insubstantial by evidence to directly contradict their own testimony, which violated the petitioner's due process rights under the Fourteenth Amendment to the United States Constitution.

Second Issue:

The trial court erred in entering judgment and sentence against petitioner on the count of home invasion when the State's evidence did not support that charge, beyond a reasonable doubt. Evidence was directly contradicted and rendered insubstantial by testimony, which violated the petitioner's due process rights under the Fourteenth Amendment to the United States Constitution.

Third Issue:

Petitioner claims that he was denied due process of law and a right to a fair trial when the State failed to show beyond a reasonable doubt that petitioner was actually present at the time of the offense and show every element of the offense, thus denying the petitioner his Fourteenth Amendment to the United States Constitution.

Fourth Issue:

Petitioner has newly discovered evidence (post trial) evidence which was unavailable at trial including the statements and testimony of Luis Cruz who was unavailable to testify at trial because he could not be located and the testimony of Sylvia Ramos, who stated that she would change her testimony from that given at trial.

Fifth Issue:

The court erred in giving instructions on behalf of the State over the petitioner's objection. The basis for these instructions was both prejudicial and inappropriate, both 5.03 and 7.02(A) were given over petitioner's objections at trial.

Sixth Issue:

The State violated petitioner's right under the United States Constitution and the Illinois State Constitution when the State made prejudicial, inflammatory, and erroneous statements in closing arguments.

Seventh Issue:

Petitioner was denied effective assistance of counsel when trial counsel failed to investigate (pre-trial) evidence and witness Luis Cruz when he held vital information concerning the actual identity of the shooter at the time of the crime. Thus petitioner was denied his Sixth Amendment right and his Fourteenth Amendment right under the United States Constitution.

Eighth Issue:

The circuit court erred in denying the motion for severence of the defendant and co-defendant when the possibility of antagonistic defenses. Thus this denied the petiitoner a right to a fair trial and prejudiced petitioner.

PART III -- PETITIONER'S CLAIMS:

Ground One -- Supporting Facts:

The State Improperly Bolstered Its Single-Eyewitness Case When Detective David March gave Hearsay Testimony That A Second Eyewitness, Luis Cruz, had also Identified Pierre Willhite as "One of the Offenders."

Edgar Perez was the only witness at trial who claimed to see Pierre Willhite commit the December 05, 1993, shooting at Elvis Valentine's apartment. (R.H.20-1) Much of the case thus came down to a question of Perez's credibility. (R.177-99, I.112-13, I.136, I.141) The State, though, through the testimony of Detective David March, bolstered its one-eyewitness case by eliciting hearsay evidence that a second eyewitness, Luis Cruz, had also seen Willhite commit the shooting.

This errant testimony occurred just after Detective March had described his December 10, 1993, interview with Edgar Perez. During that interview, according to March, Perez did not name Pierre Willhite as one of the shooters. (R.H.152)

Immediately after that testimony, still during the State's direct examination of Detective March, the following colloquy occurred:

Q: Did you interview any other individuals that evening?
A: Yes, we also learned that the surviving gunshot victim, Luis Cruz, had been released from the hospital and he was now home and we went and did a more through interview of him.
Q: After you interviewed Edgar Perez and Luis Cruz that evening, what did you do[?] Did you look for anybody else that evening?
A: Yes. One of the subjects, one of the offenders in the incident had been identified and we attempted to locate him at addresses that we had known him to use.
Q: Who specifically did you try to locate that evening?
A: Pierre Willhite

(R.H.110)

The meaning of March's testimony was clear: March had talked to Luis Cruz, and Cruz had identified Pierre Willhite as one of the offenders. Cruz himself, though, never took the stand at trial. Therefore, March's testimony provided key evidence that the jury would not have otherwise heard -- that a second eyewitness had identified Pierre Willhite as a shooter. This was highly damanging testimony, though it should never have been elicited because it violated the hearsay rule.

The hearsay rule generally prohibits out-of-court statements when they are considered for the truth of the matters asserted. Here, Detective March's testimony clearly qualified as hearsay because it described Luis Cruz's out-of-court statement, and because the court never warned the jury against using it for the truth of the matter asserted.

It is important to note that Detective March's testimony was not admissible under the evidentiary rule that allows police officers to testify about their investigative procedures. Under the investigative-procedure rule, an officer can describe the events leading up to the defendant's arrest where such testimony is necessary and important to fully explain the State's case to the jury. For example, if necessary for an understanding of the case, a police officer can testify that he interviewed a witness and then began searching for the defendant.

This investigative-procedure rule, however, does not allow an officer to reveal the substance of a witness's hearsay statements. In the instant case, March indeed revealed the substance of a hearsay statement -- that Willhite "had been identified" by

Cruz. (R.H.110) Because March divulged the substance of Cruz's statement, March exceeded the bounds of the investigative-procedure rule.

Additionally, the investigatory-procedure rule does not apply here because March's testimony was not necessary for an understanding of the State's case. March merely testified that he searched for Pierre Willhite, but failed to find him, after Cruz had identified him. (R.H.110-11) March's failure to find Willhite that day shed no light on any of the issues at trial and did not clarify or assist in the understanding of the State's case. The sole effect of that testimony was to reveal Luis Cruz's identification of Willhite. Therefore, March's testimony was rank hearsay and was thus inadmissible.

Aside from breaking the hearsay rule, March's testimony also violated Willhite's constitutional right to confront witnesses. Under the Sixth Amendment's Confrontation Clause, the State cannot elicit incriminating hearsay statements from an unavailable witness, such as Luis Cruz, unless the statements fall within a "firmly rooted" hearsay exception. Because no such hearsay exception exists here, Detective March's testimony indeed violated Pierre Willhite's Sixth Amendment rights.

Furthermore, Detective March's errant testimony may have improperly shifted the closely balanced case in favor of the State. March's testimony essentially gave the jury a second eyewitness who saw Pierre Willhite commit the shooting. Without that testimony, the jury would have had to rely solely on Edgar Perez's account for direct proof of Willhite's guilt. But Perez,

was substantially impeached. Edgar Perez was severely discredited. Perez was the only witness who claimed to see Willhite actually commit the shooting. (R.H.20) Yet, according to the testimony of two police officers, Perez did not initially give that information to the authorities. (R.H.H.15, H.109, H.152-3)

One of those two officers, Michael Pigott, was responsible for interviewing witnesses and compiling information at the crime scene on the night of the shooting. (R.H.H.10-11, H.H.21) He testified that Perez never talked to him at the scene, and that no other police personnel mentioned Perez's name that night as a potential witness. (R.H.H.15) The second officer, Detective David March, testified that when he interviewed Perez five days after the shooting, Perez said nothing about seeing any of the shooters. Instead, Perez told March that he dove into a bedroom when the shooting began, and that he did not emerge from the bedroom until after the shooting stopped. (R.H.109, H.152) According to March, it was not until a month later, on January 12, that Perez claimed to have seen Willhite commit the shooting. (R.H.153)

Other contradictions in the State's evidence also cast doubt on Perez's claim that he saw Willhite commit the shooting. For instance, Elvis Valentine testified that he was inside his bedroom talking with Edgar Perez when the shooting began. (R.68-9) Then, according to his testimony, Valentine tried to barricade the bedroom door with a piece of furniture -- presumably with Perez still inside the room. (R.68-9) This testimony severely undercut Perez's claim that he had seen the shooters enter the apartment's front door. (R.H.21-2)

Als March's testimony filled a critical gap in the State's case. Luis Cruz, as the only surviving victim of the shooting, would seem to have been an important witness for the State. According to the State's evidence at trial, Cruz was sitting near the spot where the shooting occurred, and so likely saw the shooters. (R.H.18) At the very least, the jury may have expected Cruz to testify about his injuries, since he was seriously hurt during the crime. (R.G.70-71) Instead, Cruz ignored a subpoena and never took the stand. (R.I.181)

No doubt the jurors wondered about Cruz's whereabouts, and may well have held his absence against the State's case. But March's testimony filled in this missing piece of the puzzle, and thereby wrongly reassured the jurors that Cruz had indeed seen Pierre Willhite commit the shooting.

Because March's testimony could have tipped the scales against the defense, this court should grant an evidentiary hearing, and or reverse and remand this cause for a new trial. Furthermore, the lower court's rulings are contrary to pre-existing United States Supreme Court law entitling defendant to habeas relief.

<u>Ground Two -- Supporting Facts</u>:

> That Appellant's Constitutional Right to Due Process and Access to the Court was Denied When the Trial Court Dismissed the Post-Conviction Petition Predicated Upon An Erroneous Interpretation of Facts Contradictive of Those Contained in the Record.

Defendant maintained his innocence as an actual participant of the crimes in this case and it's a known fact that <u>after</u> the

trial was over, the surviving victim wrote the judge a letter (See attached Exhibit # 1), stressing he did not see the shooters or recognize them because only a hand came around the door, and contents of this letter was not made available to appellant and that witness refused to appear in court to testify for the simple reason he wanted to tell the truth and not merely what the prosecution wanted him to say. This was a fact that was checked out by counsel after the trial (See attached Exhibit # 2), but the judge refused to allow more time to counsel in which to do so. (R.M.16)

Neither Judge A. Hett, nor defendant had knowledge of this letter before trial and the transcripts in this case clearly shows this letter was received after the trial. (L.3, M.1-M.19)

It was crucial that an Evidentiary Hearing be held as requested in the Post-Conviction Petition so defendant could prove with valid evidence he was not one of the offenders in the crime for which he stands convicted. This evidence contradicts what the trial court judge said in denying the petition, and defendant contends he was entitled to that post-conviction relief under the Due Process Clauses contained in the Fourteenth Amendment of the United States Constitution as well as article I, Section 2 of the Illinois State Constitution. (1970, Il.St.Const.)

Defendant's post-conviciton petition also verified allegations of perjury by one of the State's main witness', which were pointed out by trial testimony and comparison of what the same witness had previously told the police and defendant complied with providing clear and convincing evidence. Those references

and comparisons clearly showed perjury by Edgar Perez, and the letter from Louis Cruz verified appellant was not one of the shooters. But upon the false assumption by Judge Lampkin that the letter from Cruz was known before trial, the petition was erroneously dismissed, thus denying defendant of due process of law that he was entitled to.

Appellant's due process rights were abridged when the trial court erroneously dismissed the petition and he was correct in seeking a new trial in the Appellate Court. The error of the State's position is apparent because their chief witness perjured himself resulting in the conviction of an innocent person and the defendant was denied his opportunity to submit his evidence to the trier of fact to determine his guilt or innocence by long established precedent.

In defendant's case, it certainly should not be deemed this error was harmless because it very definitely was the only factor contributing to the jury's verdict. State witness, Edgar Perez, continually changed his story from the onset of the investigation to the end of his testimony (showing recent fabrication), and because of the unique importance of his testimony, this error cannot be deemed harmless beyond a reasonable doubt because the newly discovered statements of the victim himself, Luis Cruz, clearly exonerates appellant as one of the offenders in this crime.

Defendant was denied due process of law. The courts rulings and judgment are contrary to pre-existing United States Supreme Court case law and defendant is entitled to habeas relief.

Ground Three -- Supporting Facts:

That Defendant was Denied the Effective Assistance of Counsel on appeal When Appellate Defenders Misled Him and Abandoned His Appeal, Thus Denying Him of Meaningful Access to the Appellate Court for a Proper Review.

Defendant asserts that his Sixth and Fourteenth Amendment right to counsel at the appellate level, guaranteed to him by the Due Process Clause by the United States Constitution was violated when (1) appellate counsel failed to properly pursue the appeal, (2) confer and discuss with defendant the remedies and approaches available for such an appeal, (3) failed to discuss the issues presented in the Post-Conviction Petition which deprived defendant of a fair trial and due process of law, (4) failed to raise the trial court's denial of said petition as being founded upon erroneous facts and information, and (5) appellate counsel filed a Finley motion after totally deceiving defendant and deliberately misleading him in reference to calls and contacts regarding his case.

The trial court abused its discretion in denying the Post-Conviction Petition based upon facts which were not true, especially when the court had in its possession a letter received from the surviving victim of the crime, Luis Cruz, and was aware that this letter had not been received until after the trial was over, which contained information exonerating defendant as being a participant in the crime. That evidence added strength to the position that defendant was convicted of a crime he did not commit and that justice had not been done.

Defendant presented as evidence a copy of the letter written

by Louis Cruz (See attached Exhibit # 1), and submitted that the letter met the criteria of 'newly discovered' evidence because it was not known to defendant nor his trial counsel, Gary Stanton, who himself took the letter after the trial was over, asking to investigate further, but the trial judge denied his request. Therefore, upon its presentation in the post-conviction petition, a hearing should have been ordered so other supporting evidence could have also been introduced.

On the basis of defendant's claims in his petition, appellate counsel should have reviewed the trial transcripts, consulted with defendant and heard his version of events before choosing to abandon his appeal and filing a Finley motion after saying he was going to remain on the case. This was a close case with only four factors against defendant: (1) he was tried jointly with a guilty co-defendant; (2) the false testimony of Edgar Perez; (3) that the prosecutor told the jury defendant was a twice-convicted felon; and (4) that defendant was known to run around with the co-defendant, when in fact, he never did. The jury deliberated six hours on September 08, 1997 (C.15) then was sequestered over-night and the next day deliberated six more hours before returning a guilty verdict against both defendants. (C.16, R.J.3-J.4) The jury was prejudiced even further against defendant when the prosecution (R.1137) told them he was a twice-convicted felon, coercing the jury into believing defendant was a bad person not worthy of believing. (R.1137-1138)

The testimony of Edgar Perez was suspect from the outset. On December 10, 1993, Perez told detectives he had seen nothing,

then 32 days later on January 12, 1994, (R.H.115), suddenly said he saw defendant as one of the shooters, yet he did not say that previously in statements he made. (R.49-50)

Defendant was advised by letter (See attached Exhibit # 4), that Defender Fred Weil would represent him on his appeal and stressed he wanted a collect call if any questions existed. Defendant went through the proper channels at the Menard Correctional Center to make the call. Caseworker Larry Phipps, tried to place the call, only to be advised the Defender's Office would not accept collect calls, which is the only way a confined prisoner can call. Defendant then wrote Mr. Weil advising him that he was unable to call him and included in his letter some of the issues he wanted to have brought out in the appeal. Defendant received another letter from Mr. Weil stating that he had read the transcripts (See attached Exhibit # 5), and had determined there were no meritorious issues to present on appeal, and stated his intention to file a Finley brief. Two days later, in a letter dated January 14, 2000, (See attached Exhibit # 6), that attorney said he would not be filing a Finley motion and would not withdraw from the case, stating his reason therein. But five days later, the attorney wrote another letter (See attached Exhibit # 7), again stating he was going to withdraw. Defendant tried again to call said office to no avail, and thus, had no occasion to speak personally with said attorney nor the Public Defender's Office that he represented.

Defendant is not entitled to "effective" representation on a collateral proceeding; however, he is entitled to "reasonable"

representation. Defendant did not receive that reasonableness he was entitled to receive.

Prejudice resulted to the defendant in the trial court's denial of his petition and failure of appointed counsel on appeal was also constitutionally ineffective, which is 'cause' for this Court to rule favorably for this defendant, because he was entitled to have his claims heard in the trial court where they were presented.

Defendant was entitled to "reasonable" representation as provided by State law on his appeal of the denial of his post-conviction petition. The unreasonableness of appellate counsel to pursue those valid errors with a proper decision of the wrong ruling of the trial court is grounds in itself to warrant reversal and a new trial.

Ground Four -- Supporting Facts:

That Defendant was Deprived Of His Constitutional Right to be Free of an Illegal and Unlawful Conviction when the Trial Court Refused to Hear Evidence of Actual Innocence Presented in the Post-Convicition Petition and to Give an Evidentiary Hearing Thereon.

A post-conviction petition is the proper remedy when a defendant is entitled to a new trial on the basis of newly discovered evidence and proof of perjury resulting in the conviction, especially when it is shown the State knowingly and intentionally used perjured testimony and knew it was false. Even though defendant's pro-se petition was far from perfect and lacked only the affidavits, it should have been reviewed by that court and not dismissed on erroneous facts or beliefs that were not in the

record, as was done in this case. The mere fact that the judge failed to recognize the claims as being valid should never be grounds for procedural default of the issues contained therein, and in reality, that denial should be viewed under the cause and prejudice standards due to the harm and prejudice it caused this defendant. This case was fraught with errors, most of which may be attributed to the ineffective assistance of counsel, which after reviewing the testimony of witnesses for the State and comparing them with the initial police reports, it is impossible to believe the prosecution could not recognize much of their testimony as being "recently fabricated," i.e., perjured, and the failure of the prosecution to correct it was egregious error affecting the fundamental rights of this defendant. (See attached Exhibit # 3)

Defendant's post-conviction petition pointed out numerous incidents of perjury and pointed out witnesses who verified appellant was not one of the offenders because he was elsewhere at the precise time of the crime. The plain error rule should have been upheld by the appellate court on direct appeal because it wa obvious the jury believed Perez when they should not have, and evidence against defendant at trial was closely balanced because four defense witnesses verified defendant could not have been at the crime scene. (R.H.H.91-92, H.H.112-114, H.H.159-160, H.H.182-184, H.H.227-228) Elvis Valentin testified that Perez was in the bedroom with him (R.68-69), and Detective Piggott said Perez told him of diving into the bedroom seeking cover (R.68-69), and hence, Perez could not have seen the shooter, let alone

identify defendant as one of the shooters. The petition also contained allegations of hearsay evidence erroneously admitted to bolster the credibility of Perez to the jury because they were told Luis Cruz would come forth and verify everything Perez told them. Cruz never intended to do this and that is shown by his letter received after the trial, so this was grossly rank hearsay as well as being a false statement by Detective March which should never have been allowed at the trial. Detective March's testimony was used to fill in many missing gaps in the State's case, especially when he asserted what Cruz might possibly say, when Cruz had no intention of doing so. That was an error which should have caused reversal of the case in itself, on direct appeal. Without conjecture and perjured testimony, there is no valid evidence at all linking defendant to this crime and the State's knowing use of perjured testimony constitutes a violation of due process, and the failure of the prosecution to correct that testimony also constitutes a Brady violation.

Had trial counsel, Mr. Gary Stanton, gone out and interview Perez in preparation of trial, he would have known Perez was lying instead of waiting until the trial was over and receiving the letter from Louis Cruz. His failure to do so also kept him from impeaching Perez at the trial, and failure to impeach a witness when significant impeachment is available is not trial strategy, it is ineffective assistance of counsel.

Defendant tried to bring all this to the trial court but was prevented from doing so when Judge Lampkin denied the Petition, but by basing said denial upon false and erroneous conclusions

was also error. Defendant wanted also to discuss this further with appellate counsel, but said counsel never consulted with, nor talked to, defendant, and instead, misled him into believing he could do so by phone, when in fact he could not, because that attorney's office would not accept collect phone calls. The information and affidavits that defendant had to give to the attorneys would clearly have shown this was a just and meritorious cause, worthy of their time and efforts in the case, but appellant wasn't given the opportunity to give it to them. The defendant expected only "reasonable" representation, but what he received was none at all.

Defendant submits that this issue warrants an evidentiary hearing or an outright reverse and remand for a new trial. The issues raised herein are contrary to pre-existing United States Supreme Court case law and certainly warrants an evidentiary hearing for habeas relief.

SD428 MCC#1

Exhibi

To: Honorable Judge Thomas A. Hett
Court room 506,

I been subpoena by states a
to testify; To the incident that i was
of (Luis Cruz) and my deceased friend
(Edward Green), on the night of Dec 5, 199
I refuse to come in and tell a lie or
testifing to a lie, This is what i (Luis Cru
saw on the night of Dec 5, 1995, between
7:35 pm, I was over my Mother-in-la
when some friend's meaning (Edgar and
Came over to the house Then few minu
later, some indevisuals knock on the d
(Green) open the door talking to the
indivisuals saying that (Elvis) was
at home, and as he (Green) was closein
the door some one from the (outside
shot my Friend (Edward Green) and i r
to the door to help push the door c
and i was calling for (Edgar perez) Who
not no where around or no where in s
to help me push the door close, Than
saw a hand come around the door shoo
me, so trie to run to the kitchen ga
~~while~~ shot from behiend several times
and fell to the ground or floor,

5D428 MCC#1

This is the God giving truth that
what had happened the night of
Dec 5, 1993. The ones that where in the
dening room during the shooting was m
(Luis Cruz) and the deceased victim
(Edward Green).
~~This statement~~ is the
Turth of the crime i (Luis Cruz) w
victem of.

Luis Cruz !!!



Luis Cruz a/k/a Valentine Pablo 9779138
In Division 10 for Aggravated Battery - 2A
Interview on 11/6/97

Luis Cruz indicated that the contained in the police reports was not said by him because he never spoke to the police after the hospital.

On the day of the shooting Luis came over to Elvis' apartment to visit his girlfriend, Sylvia Ramos and his child by her. When Luis came over, Edward Green and Edgar Perez were already in the apartment. He was informed by others of the alleged altercation between "Pierre" and Elvis but was not present for it. Luis has known Pierre Willhite for a considerable amount of time and knows his voice when he hears it.

When Luis came into the Valentine apartment he was staying in the living room area with Edward Green. He indicated while he was present there were two knocks on the door, although he had been told there had been someone knocking prior to his arrival. The second time there was a knock Edward Green answered the door. At some point a shot was fired knocking Mr. Green to the floor. Luis was behind the door and started to push the door closed. As he was still pushing on the door Edward got up and tried to help him. More shots were fired and Green again fell on the floor. A hand came from behind the door and fired a shot at him. Luis then attempted to run to the kitchen where Sylvia Ramos, Otelina Valentine and others were at but was shot. He fell to the floor and played dead. He did not see any of the offenders.

Luis indicated he heard the voices from behind the door and did not recognize any of the voices to be that of Pierre Willhite. Had he heard Pierre's voice he would have recognized it. Edgar Perez was not in the living room with him nor in the hallway. Perez was in the bedroom of Elvis Valentine. Perez is known to lie. Had Edgar Perez been in the hallway Luis would have seen him because he attempted to run in that direction as he was getting shot. Luis Cruz had called for Edgar Perez to aid him in closing the door

SD428: MCC#1

STATE OF ILLINOIS )
) SS
COUNTY OF COOK )

Exhibit #3

## AFFIDAVIT

I, Tony Powell being first duly sworn upon my oath depose and state that the following matters set forth herein are both true and correct and made upon personal knowledge and is fact under penalty of perjury, and if called as a witness, I am competent to testify thereto:

That on the night of December 5, 1993, Edgar Perez known as "Aggie" came over to my house and told me that Edmund F. Green had been shot at Elvis's house, and I asked him who did it, and he said that he (Edgar) did not see who shot Green because he (Edgar) ran into Elvis's bedroom when the shots were fired. Edgar did not ever tell me that Pierre Willhite or Darryl Washington did the shooting.

Subscribed and sworn to before me on the 12 day of April, 2000.

Respectfully submitted,

Tony Powell

NOTARY PUBLIC

OFFICIAL SEAL
SANDRA LUJANO
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES: 11/25/01

A-3

office of the
COOK COUNTY PUBLIC DEFENDER
69 WEST WASHINGTON • 15th FLOOR • CHICAGO, IL 60602 • (312) 603-0600

Rita A. Fry • Public Defender

Appellants Exhibit #4

January 7, 2000

Mr. Pierre Willhite
Reg. No. N-91832
Menard Corr. Ctr.
P.O. Box 711
Menard, IL 62259

Re: **Appeal No. 99-3696**

Dear Mr. Willhite:

I have been assigned to represent you in the appeal of your case before Judge Lampkin.

Because of the great length in time that the Appellate process takes, I will take this opportunity to explain it briefly to you.

I first review the record of your trial or plea and after doing the appropriate research, determine whether there were any errors that would provide us with an issue to pose to the Appellate Court. If so, I would then file a brief that I have written on your behalf. This brief is a document based on legal principles that informs the Appellate Court why they should overturn the trial court's decision. What the Appellate Court does depends on the particular facts of each case, but it must be remembered that once you are convicted, the Appellate Court rarely changes the trial court's decision.

After I file your brief the State's Attorney will file theirs in response. They are required to file their brief within 35 days of ours, but normally it takes them 2 to 9 months to actually do so. We then have 14 days in which to respond to their brief. Whether we actually reply to their brief depends upon the need to address some argument they have made in response to one or more of our issues. This completes the briefing process.

The case then goes before three Appellate Court judges. They can either decide the case based only on the briefs and the transcript from the lower court or they can request that the

111

*State's Attorney and I argue our position before them. During the argument they can and do ask anything they wish. Your presence is not allowed at this proceeding, unless you are out of custody. Nor is any testimony taken from any witnesses. After the judges receive all the briefs and transcripts (and hear, if they deem it necessary, oral argument) they take from three to nine months (sometimes longer) to file a written decision.*

*Thus, the Appellate process can take more than a year and it will be quite some time before a decision is made regarding your case. I would appreciate it if you would call me, collect at the above number, to inform me whether you wish to proceed with the appeal. It will also give you a chance to ask me any questions you may have regarding your case. That said, I must tell you, that if you call in the next few weeks, I probably would only be able to address general questions as I may not have as yet read the record of your case.*

*Sincerely,*

F. Weil

***FREDERICK WEIL***
*Assistant Public Defender*

office of the
COOK COUNTY PUBLIC DEFENDER
69 WEST WASHINGTON • 15th FLOOR • CHICAGO, IL 60602 • (312) 603-0600

Rita A. Fry • Public Defender

Appellant's Exhibit "5"

JANUARY 12, 2000

Mr. Pierre Willhite
Reg. No. N-91832
Menard Correctional Center
P.O. Box 711
Menard, IL 62259-0711

Re: Appeal Number 99-3696

Dear Mr. Willhite:

I have read through the transcript and common law record of your post-conviction proceeding with the hope that I would find some issues which I could raise before the Appellate Court. Unfortunately, however, I have determined that there are no meritorious issues which could be raised on appeal.

In an appeal, I am limited to argue those issues raised in your post-conviction petition. Where the judge summarily dismisses a post-conviction petition, I must examine the petition itself and see if it raises the gist of a constitutional violation. Petitions must contain enough specific facts and assertions from which a constitutional claim can be found. Conclusions are not enough. In addition, any issues already raised and rejected in a direct appeal, or which could have been raised, cannot be litigated again. This is a principle known as res judicata.

After reading through your record, my research reveals no claims that have the support of the law. Your post-conviction petition contained eight allegations of error. Rather than repeat them all here, I must tell you that Judge Lampkin provided an accurate analysis on the record as to why those issues would not convince the Appellate Court to reverse your conviction. For example, your claim of ineffective assistance of counsel was made without the necessary affidavits. Nor did your allegations explain how Cruz's testimony would have established your innocence. A claim of ineffectiveness must establish that an attorney's performance was deficient, and that "but for" the attorneys's conduct, the verdict would have been different. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984). Your petition failed to provide the court with sufficient evidence to determine that your trial attorney was deficient or that the outcome of your trial would have been different.

(2) "B"

As always, a second attorney from our office reviewed your case. This is done as a precaution to ensure that all possible issues are spotted and considered. However, it was agreed that we could not prevail on any issue we would present to the court. Within a short period of time, a brief will be submitted to the Appellate Court informing it that in my opinion no issues exist in your appeal. It is basically a motion to withdraw from the case. This may be done, following the guidelines set forth in a United States Supreme Court case called Pennsylvania v. Finley, 481 U.S. 551, 107 S.Ct. 1990 (1987). You are not obligated to agree with my assessment, however. If you wish, you are free to submit your own motion and arguments to the Appellate Court, or file your own motion saying that you believe some issues do exist, and that you request an attorney to assist you in your appeal. That address is:

Gilbert Marchman
Clerk of the Appellate Court
160 North LaSalle St.
14th Floor
Chicago, Illinois 60601

You will, in fact, be getting a letter from the Appellate Court asking whether you want to raise any errors directly to the Court. In effect, the Court will check with you to see if you agree or disagree with my assessment of your appeal.

If you have any questions or you wish to discuss possible issues, I would be more than happy to talk with you. You can write or call me collect at 312-603-0600. A copy of the brief will be mailed to you. I am sorry there was not more that I could do.

Sincerely,

F. Weil

Frederick Weil
Assistant Public Defender

office of the
COOK COUNTY PUBLIC DEFENDER
69 WEST WASHINGTON • 15th FLOOR • CHICAGO, IL 60602 • (312) 603-0600

Rita A. Fry • Public Defender

Appellant's Exhibit # C

JANUARY 14, 2000

Mr. Pierre Willhite
Reg. No. N-91832
Menard Corr. Ctr.
P.O. Box 711
Menard, IL 62259

Re: Appeal No. 99-3696

Dear Mr. Willhite:

I am writing to let you know that I will not be seeking to withdraw from your case. Rather than the Finley motion I previously wrote about, I will be filing a brief on your behalf. Therefore, with my apologies, please disregard the letter I sent you two days ago.

Because of the way a date was written in the common law record, I thought the judge had summarily dismissed your petition in a timely manner. But after one more review of the case, I saw that the judge's order occurred after the 90-day period allowed for such an order. Because you mailed your petition more than 90 days prior to its dismissal (time begins to run from the date the petition was mailed, not the date received by the clerk of the court), you are entitled to a hearing on the petition. It is that argument that I will make to the Appellate Court.

Should you have any questions, please give me a call.

Sincerely,

F. Weil

FREDERICK WEIL
Assistant Public Defender

office of the
COOK COUNTY PUBLIC DEFENDER
69 WEST WASHINGTON • 15th FLOOR • CHICAGO, IL 60602 • (312) 603-0600

Rita A. Fry • Public Defender

Appellants
Exhibit # 7

JANUARY 19, 2000

Mr. Pierre Willhite
Reg. No. N-91832
Menard Corr. Ctr.
P.O. Box 711
Menard, IL 62259

Re: Appeal No. 99-3696

Dear Mr. Willhite:

Unfortunately, I am writing to let you know that I will be seeking to withdraw from your case. I am so sorry for the confusion, but the issue I planned on making on your behalf does not, it turns out, pertain to your situation. After further research, I found the "mailbox rule" applies only to the filing of the post-conviction petition, not the time in which the judge must find it frivolous.

In People v. Saunders (2nd Dist. 1994), 261 Ill.App.3d 700, 633 N.E.2d 1340, the Appellate Court ruled that the mailbox rule applied to the time a petition was considered filed. However, the Court went on to say that the period in which a judge could dismiss a petition, without appointing a counsel or holding a hearing, begins to run only after the petition was stamped by the court clerk. The Court made a distinction between the two situations in reliance upon the language of the Post-Conviction Act. Compare the wording of Section 725 ILCS 5/122-1 with that of Section 725 ILCS 5/122-2.1(a).

Realizing that the Court would likewise determine in your case that the judge acted within 90 days of the date your petition was stamped by the clerk and considered "docketed," I have determined not to write the issue. However, that does not mean you cannot do so. You could argue that the 90-day period should run from the date you mailed your petition. Perhaps, but not likely, the State or the Court would not catch the flaw in the argument. As stated in my first letter, you are not obligated to agree with my assessment that there are no viable issues in your case. If you wish, you are free to submit your own motion and arguments to the Appellate Court (such as the one I just mentioned), or file your own motion saying that you believe some issues do exist, and that you request an attorney to assist you in your appeal. The address is:

(4)"B"

Gilbert Marchman
Clerk of the Appellate Court
160 North LaSalle St.
14th Floor
Chicago, Illinois 60601

You will, in fact, be getting a letter from the Appellate Court asking whether you want to raise any errors directly to the Court. In effect, the Court will check with you to see if you agree or disagree with my assessment of your appeal.

Anyway, I apologize again for the misapprehension of the issue. If you have any questions, please give me a call.

Sincerely,

FREDERICK WEIL
Assistant Public Defender

office of the
COOK COUNTY PUBLIC DEFENDER
69 WEST WASHINGTON • 15TH FLOOR • CHICAGO, IL 60602 • (312) 603-0600
Rita A. Fry • Public Defender

Appellant's
Exhibit 8

FEBRUARY 1, 2000

Mr. Pierre Willhite
Reg. No. N-91832
Menard Corr. Ctr.
P.O. Box 711
Menard, IL 62259

Re: Appeal No. 99-3696

Dear Mr. Willhite:

I received your letter requesting a date when you might call me to discuss your case. Most any day is okay with me, but as you need a specific date so that your counselor can arrange the call, Tuesday, February 15, 2000, will be fine. To narrow down the time the call should be placed, let's say 9:30 to 11:30 a.m. I look forward to speaking with you. If there are any problems, have your counselor call me.

Sincerely,

F. Weil

**FREDERICK WEIL**
Assistant Public Defender

A-11

Printed on Recycled Paper

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

PIERRE WILLHITE, Plaintiff,

v.

JONATHAN R. WALLS, Defendants.

No. ______

The Honorable ______, Judge Presiding.

NOTICE OF FILING

TO:

Clerk of the Court
U.S.D.C. for the Northern District of Illinois
219 South Dearborn, 20th Floor
Chicago, Illinois 60604

PLEASE TAKE NOTICE that on or before the 17 day of June, 2002, I shall file with the Clerk of the U.S. District Court For The Northern District of Illinois, the attached Plaintiff's Petition for Habeas Corpus Relief and attached Exhibits.

a copy of which is hereby served upon you.

By: Pierre Willhite
Register Number N-91832
Post Office Box 711,
Menard, Illinois 62259

CERTIFICATE OF SERVICE

I, Pierre Willhite, being duly sworn aver that I have served copies of the foregoing to the person named above by placing such copies in the U.S. Mailbox at the Menard Correctional Center on the 17 day of June, 2002; postage prepaid. UNDER THE PENALTY OF PERJURY THE FOREGOING IS TRUE AND CORRECT.

Pierre Willhite
Affiant/